IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**CORY HEMRICH and COOPER**
**OGBURN, individually and on behalf of**
**all those similarly situated,**

                **Plaintiffs,**

    **v.**

**DRAFTKINGS, INC., a Delaware**
**corporation,**

                **Defendant.**

Case No. 3:15-cv-445

## DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISS PROCEEDINGS

# TABLE OF CONTENTS

Page

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ................................................... 1

II.  FACTUAL BACKGROUND.......................................................................................... 2

    A.   Plaintiffs Voluntarily Used the DraftKings Website and Agreed to the Terms
of Use, Including the Arbitration Provision.................................................................. 2

    B.   Disregarding the Agreement to Arbitrate, Plaintiffs Improperly Pursued This
Dispute In This Court................................................................................................... 3

III. ARGUMENT .................................................................................................................. 4

    A.   Plaintiffs Must Arbitrate Their Claims Against DraftKings On an Individual
Basis ............................................................................................................................ 4

        1.   The Written Arbitration Provision Is Valid ........................................................ 5

        2.   All of Plaintiffs' Claims Fall Within the Scope of the Arbitration
Provision ......................................................................................................... 8

        3.   DraftKings Has Not Waived Its Right to Arbitrate .......................................... 10

    B.   Plaintiffs Cannot Avoid Their Agreements to Arbitrate............................................ 10

        1.   The Validity of the Entire Contract Must Be Determined By an
Arbitrator........................................................................................................ 11

        2.   The Agreement to Proceed On an Individual Basis In Arbitration Is
Enforceable .................................................................................................... 12

        3.   The Arbitration Provision Is Not Unconscionable............................................ 14

        4.   The Court Should Dismiss the Complaint As All Claims Are Subject to
Arbitration...................................................................................................... 16

    C.   DraftKings Should Be Awarded Its Attorneys' Fees and Expenses Incurred In
Enforcing Arbitration................................................................................................. 17

IV.  CONCLUSION............................................................................................................. 18

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Express v. Italian Colors Restaurant*,
    133 S. Ct. 2304 (2013) ............................................................................................ 12

*AT&T Mobility LLC v. Concepcion*,
    131 S. Ct. 1740 (2011) ........................................................................................ 5, 13

*Breckenridge v. Cambridge Homes, Inc.*,
    246 Ill. App. 3d 810 (1993) ..................................................................................... 6

*Brody v. Finch Univ. of Health Sciences/The Chicago Med. Sch.*,
    298 Ill. App. 3d 146 (1998) ..................................................................................... 6

*Cnty. of McHenry v. Ins. Co. of the W.*,
    438 F.3d 813 (7th Cir. 2006) ................................................................................... 8

*Cont'l Cas. Co. v. Am. Nat. Ins. Co.*,
    417 F.3d 727 (7th Cir. 2005) ................................................................................. 16

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985) ................................................................................................. 5

*Deaton v. Overstock.com, Inc.*,
    No. 07-CV-643-JPG, 2007 WL 4569874 (S.D. Ill. Dec. 27, 2007) ......................... 5

*Doctor's Assocs. v. Casarotto*,
    517 U.S. 681 (1996) ............................................................................................... 16

*Eiland v. Arctic Food Servs., Inc.*,
    No. 08-0066-DRH, 2008 WL 1821713 (S.D. Ill. Apr. 21, 2008) ............................ 9

*Erickson Oil Prods. v. State*,
    184 Wis.2d 36 (1994) ............................................................................................. 12

*Faulkenberg v. CB Tax Franchise Sys., LP*,
    637 F.3d 801 (7th Cir. 2011) ............................................................................. 6, 16

*Forness v. Cross Cnty. Bank, Inc.*,
    No. 05-CV-417-DRH, 2006 WL 726233 (S.D. Ill. Mar. 20, 2006) ................... 6, 16

*Fteja v. Facebook, Inc.*,
    841 F. Supp. 2d 829 (S.D.N.Y. 2012) ............................................................... 7, 15

*Gibson v. Neighborhood Health Clinics, Inc.*,
    121 F.3d 1126 (7th Cir. 1997) ................................................................................. 6

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Grand Wireless, Inc. v. Verizon Wireless, Inc.*,
748 F.3d 1 (1st Cir. 2014) ............................................................................... 6

*Harter v. Iowa Grain Co.*,
220 F.3d 544 (7th Cir. 2000) ...................................................................... 2, 17

*In re DiMare*,
462 B.R. 283 (Bankr. D. Mass. 2011) .......................................................... 14

*In re Marriage of Tabassum & Younis*,
377 Ill. App. 3d 761 (Ill. App. 2007) ........................................................... 15

*Jackson v. Payday Fin., LLC*,
764 F.3d 765 (7th Cir. 2014) .................................................................. 14, 15

*Janiga v. Questar Capital Corp.*,
615 F.3d 735 (7th Cir. 2010) .................................................................. 11, 12

*Kinkel v. Cingular Wireless LLC*,
223 Ill. 2d 1 (2006) ...................................................................................... 14

*Kroll v. Doctor's Associates, Inc.*,
3 F.3d 1167 (7th Cir. 1993) .......................................................................... 12

*Lewis v. Advance Am., Cash Advance Centers of Illinois, Inc.*,
No. 13-CV-942-JPG-SCW, 2014 WL 47125 (S.D. Ill. Jan. 6, 2014) .................... 13

*Phoenix Ins. Co. v. Rosen*,
242 Ill. 2d 48 (2011) .................................................................................... 15

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
388 U.S. 395 (1967) ...................................................................................... 11

*ProCD, Inc. v. Zeidenberg*,
86 F.3d 1447 (7th Cir. 1996) .......................................................................... 7

*Robinson v. Title Lenders, Inc.*,
364 S.W.3d 505 (Mo. 2012) .......................................................................... 13

*Scaffidi v. Fiserv, Inc.*,
218 F. App'x 519 (7th Cir. 2007) ............................................................ 12, 13

*Shearson/Am. Express, Inc. v. McMahon*,
482 U.S. 220 (1987) ........................................................................................ 2

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Stolt-Nielsen v. Animalfeeds Int'l Corp.*,
  130 S. Ct. 1758 (2010) ............................................................................................. 13

*Swift v. Zynga Game Network, Inc.*,
  805 F. Supp. 2d 904, 912 (N.D. Cal. 2011) ....................................................... 7, 15

*United States v. Horne*,
  474 F.3d 1004 (7th Cir. 2007) ................................................................................... 5

*Vadnais v. NSK Steering Sys. Am., Inc.*,
  675 F. Supp. 2d 205 (D. Mass. 2009) ....................................................................... 6

*Van Tassell v. United Mktg. Grp., LLC*,
  795 F. Supp. 2d 770 (N.D. Ill. 2011) ........................................................................ 7

*Vernon v. Qwest Commc'ns Intern., Inc.*,
  857 F. Supp. 2d 1135 (D. Colo. 2012) ...................................................................... 7

*Volkswagen of America, Inc. v. Sud's of Peoria, Inc.*,
  474 F.3d 966 (7th Cir. 2007) ..................................................................................... 2

*Wal-Mart Stores, Inc. v. Helferich Patent Licensing, LLC*,
  51 F. Supp. 3d 713 (N.D. Ill. 2014) ........................................................................ 10

*Williams v. Jo-Carroll Energy, Inc.*,
  382 Ill. App. 3d 781 (Ill. App. 2008) ...................................................................... 15

**Statutes**

9 U.S.C. § 1 .................................................................................................................... 1

9 U.S.C. § 2 .................................................................................................................... 5

Defendant DraftKings, Inc. ("DraftKings") respectfully petitions this Court, pursuant to the Federal Arbitration Act ("FAA") (9 U.S.C. § 1, *et seq.*), for an order compelling individual arbitration of each of the claims raised by Plaintiffs Cory Hemrich and Cooper Ogburn ("Plaintiffs") in accordance with the terms of the parties' binding arbitration agreement.

## I.      INTRODUCTION AND SUMMARY OF ARGUMENT

This matter belongs in front of an arbitrator, not a court, because the parties agreed to arbitrate any disputes arising out of their relationship.  DraftKings provides customers, such as Plaintiffs, with an opportunity to enter online fantasy sports contests by registering to use DraftKings' web-based service.  As part of the login and registration process, Plaintiffs agreed to DraftKings' Terms of Use, through which the parties agreed that "***any and all disputes***" between them would be referred to binding, non-class arbitration before the American Arbitration Association ("AAA").  (Compl. Ex. G at 248.)  DraftKings requested Plaintiffs to voluntarily dismiss this lawsuit and pursue arbitration in accordance with the Terms of Use, but they refused this request.  Accordingly, DraftKings is petitioning this Court to compel Plaintiffs to arbitrate this dispute as the parties agreed.

There is a strong policy in favor of enforcing arbitration agreements; indeed, the Supreme Court has ordered courts to "rigorously enforce agreements to arbitrate."  *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987); *see also Volkswagen of America, Inc. v. Sud's of Peoria, Inc.*, 474 F.3d 966, 970 (7th Cir. 2007) (the FAA "provid[es] that binding arbitration agreements 'shall be valid, irrevocable, and enforceable'").  The Seventh Circuit has shown a commitment to this policy by ordering a party who disregards a binding arbitration provision— as Plaintiffs have done here—to pay the attorneys' fees and expenses incurred to compel arbitration.  *See Harter v. Iowa Grain Co.*, 220 F.3d 544, 557 (7th Cir. 2000).  Awarding

DraftKings the attorneys' fees and expenses it incurred to bring this motion is especially appropriate here because the parties' agreement expressly provides that a party who fails to abide by the arbitration provision must pay "all attorneys' fees and expenses reasonably incurred in enforcing this Agreement to arbitrate and the Forum to which the parties have herein agreed." (Compl. Ex. G at 249.)  Because Plaintiffs have failed to abide by the clear arbitration provision, requiring both the Court and DraftKings to needlessly expend resources, this Court should grant this petition to compel arbitration, dismiss Plaintiffs' lawsuit and require Plaintiffs to reimburse DraftKings for the attorneys' fees and expenses it incurred to bring this petition.

## II.     FACTUAL BACKGROUND

### A.     Plaintiffs Voluntarily Used The DraftKings Website And Agreed To The Terms Of Use, Including The Arbitration Provision

Plaintiffs' lawsuit centers on their use of DraftKings' online fantasy sports website, through which Plaintiffs Hemrich and Ogburn allege they made initial deposits of $25 and $250, respectively, to participate in online fantasy sports contests.  (Compl. ¶¶ 2-3.)  To use the DraftKings website and make this deposit, Plaintiffs were first required to review and accept the Terms of Use that govern the website and the parties' relationship.  The Terms of Use to which Plaintiffs agreed contained an arbitration provision, under which both DraftKings and Plaintiffs agreed that any and all disputes between them would be resolved in binding, non-class arbitration (with the only exception being for individual actions brought in small claims court). Additionally, under the Terms of Use, any party failing to abide by the arbitration provision bears the costs and attorneys' fees incurred to compel compliance with the arbitration agreement:

> Any and all disputes, claims or controversies arising out of or relating to this Agreement, the breach thereof, or any use of the Website (including all commercial transactions conducted through the Website) ("Claims"), except for claims filed in a small claims court that proceed on an individual (non-class, non-representative) basis, shall be settled by binding arbitration before a single

arbitrator appointed by the American Arbitration Association ("AAA") in accordance with its then governing rules and procedures[.]

* * *

This arbitration undertaking is made pursuant to and in connection with a transaction involving interstate commerce, and shall be governed by and construed and interpreted in accordance with the Federal Arbitration Act at 9 U.S.C. Section 1, et seq.  This arbitration provision shall survive termination of this Agreement[.]  …  Any and all claims shall be arbitrated on an individual basis only, and shall not be consolidated or joined with or in any arbitration or other proceeding involving a Claim of any other party.  You and DraftKings agree that the arbitrator shall have no authority to arbitrate any Claim as a class action or in any other form other than on an individual basis.

In the event that either party initiates a proceeding involving any Claim other than an arbitration in accordance with this Section, or initiates a proceeding involving a Claim under this Section other than in the Forum, the other party shall recover all attorneys' fees and expenses reasonably incurred in enforcing this Agreement to arbitrate and the Forum to which the parties have herein agreed.

(Compl. Ex. G at 248-49.)  Plaintiff Hemrich agreed to these Terms of Use when he successfully registered his DraftKings account on October 7, 2014; and Plaintiff Ogburn likewise agreed to the Terms of Use when he successfully registered his DraftKings account on February 1, 2015. (Dent Decl., Exs. B, C.)

## B. Disregarding The Agreement To Arbitrate, Plaintiffs Improperly Pursued This Dispute In This Court

Contrary to their agreement to the DraftKings' Terms of Use and its arbitration provision, Plaintiffs filed this putative class action on April 21, 2015, asserting the following class claims: (1) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") by means of deceptive acts or practices; (2) violation of the ICFA based on unfair acts or practices; (3) violation of the Missouri Merchandising Practices Act ("MMPA") by means of deception, false promise or misrepresentation; (4) violation of the MMPA by means of unfair practices; and (5) declaratory relief regarding the Terms of Use.  (Compl. ¶¶ 100-107, 108-117, 118-126, 127-137, 138-151.)  More specifically, Plaintiffs challenge DraftKings' offers to double a customer's

3

first deposit, up to $600, alleging that the offer is deceptive and unfair because it is subject to certain terms and conditions.[1]

After filing and serving the Complaint, DraftKings promptly informed Plaintiffs' counsel that rather than proceed in court, the dispute must be arbitrated in accordance with the Terms of Use.  (MacDonald Decl. ¶ 2.)  Plaintiffs, however, refused DraftKings' request to arbitrate. Because of Plaintiffs' insistence on improperly proceeding in this forum notwithstanding the parties' agreement to arbitrate, DraftKings is now required to petition this Court to compel arbitration.

## III.    ARGUMENT

### A.    Plaintiffs Must Arbitrate Their Claims Against DraftKings On An Individual Basis

Under both federal and Illinois law, a party is compelled to arbitrate his dispute against another party when there is (1) a valid, written agreement between the parties that contains an arbitration clause and (2) the presence of an arbitrable issue.  *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005).  If both factors are met—as is the case here—then the Court must issue an order compelling arbitration.  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985) ("the Arbitration Act requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel [arbitration]").

Under the FAA[2], there is a strong federal policy favoring arbitration, as arbitration provisions are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in

---

[1]  DraftKings vigorously disputes Plaintiffs' allegations; DraftKings plainly describes the terms of its double deposit offering with clear disclosures on its website.  But because this dispute should be resolved by an arbitrator, DraftKings will not burden the Court here with a description of the fatal flaws with Plaintiffs' allegations and claims.

[2]  The Federal Arbitration Act ("FAA") governs arbitration agreements, like the one at issue here, affecting interstate commerce.  9 U.S.C. § 2, *et seq.*  Here, the Terms of Use to which the parties

*(Cont'd on next page)*

equity for the revocation of any contract."  9 U.S.C. § 2.  Accordingly, the Supreme Court has "repeatedly described the [FAA] as embodying a national policy favoring arbitration and a liberal federal policy favoring arbitration agreements[.]"  *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1749 (2011) (internal citation omitted).  "In line with [the principles of the FAA], courts must place arbitration agreements on equal footing with other contracts and enforce them according to their terms."  *Id.* at 1745 (internal citations omitted).  As a result, "absent a ground for revocation of the contractual agreement," the FAA "leaves no place for the exercise of discretion by a district court, [and] instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

## 1.      The Written Arbitration Provision Is Valid

Plaintiffs and DraftKings agreed to a valid written arbitration provision in the Terms of Use.  "An agreement to arbitrate is treated like any other contract . . . In determining whether a valid arbitration agreement arose between the parties, a federal court should look to the state law that ordinarily governs the formation of contracts."  *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1130 (7th Cir. 1997).  Under Illinois law[3], a valid contract requires (1) an

---

*(Cont'd from previous page)*

   agreed affect interstate commerce because the agreement governs an interstate transaction between Plaintiffs and Defendant made over the Internet.  It is well-settled that the Internet is an instrumentality of interstate commerce, *United States v. Horne*, 474 F.3d 1004, 1006 (7th Cir. 2007), and that the FAA therefore applies to agreements made over the Internet, such as the one between Plaintiffs and DraftKings.  *Deaton v. Overstock.com, Inc.*, No. 07-CV-643-JPG, 2007 WL 4569874, at *2 (S.D. Ill. Dec. 27, 2007) (applying the FAA to a sale made over the Internet).  All of these connections are sufficient to establish that the Terms of Use at issue here evidence transactions involving interstate commerce, such that the FAA then applies in this case.

[3]  Courts in this district typically apply contractual choice-of-law provisions when assessing the validity of an arbitration clause.  *Forness v. Cross Cnty. Bank, Inc.*, No. 05-CV-417-DRH, 2006 WL 726233, at *1 (S.D. Ill. Mar. 20, 2006) (applying choice-of-law provision in arbitration agreement calling for the application of Delaware law).  Here, the Terms of Use call for the application of Massachusetts

*(Cont'd on next page)*

offer, (2) an acceptance, and (3) consideration.  *Brody v. Finch Univ. of Health Sciences/The Chicago Med. Sch.*, 298 Ill. App. 3d 146, 154 (1998).  When they voluntarily clicked the box "I agree to the Terms of Use and the Privacy Policy" at registration, Plaintiffs plainly consented to the governing Terms of Use and are now bound by its terms.

To use the DraftKings website, the user must agree to the Terms of Use, including its arbitration provision, as noted in the complaint.  (Compl. ¶ 84.)  DraftKings' Terms of Use constitute an offer which Plaintiffs accepted, and Plaintiffs cannot now avoid their obligations under these binding terms by arguing that their assent was insufficient.  The Terms of Use were presented to them online.   While Plaintiffs do not indicate whether or not they read the terms, "[i]gnorance of the contract's arbitration provision is no defense if they failed to read the contract before signing."  *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 809 (7th Cir. 2011) (citing *Breckenridge v. Cambridge Homes, Inc*., 246 Ill. App. 3d 810, 819 (1993) ("A party who has had an opportunity to read a contract before signing, but signs before reading, cannot later plead lack of understanding.").

---

*(Cont'd from previous page)*

law.  (Compl. Ex. G at 249 ("These Terms of Use shall be governed by the internal substantive laws of the Commonwealth of Massachusetts, without respect to its conflict of laws principles.")  Accordingly, Massachusetts law governs the analysis of the validity of the arbitration clause; however, because Massachusetts law does not meaningfully differ from forum law on that point, the arbitration provision is enforceable under either Illinois or Massachusetts law.  *See*, *e.g*., *Grand Wireless, Inc. v. Verizon Wireless, Inc*., 748 F.3d 1, 6 (1st Cir. 2014) (Massachusetts courts require that the defendants "must demonstrate that a valid agreement to arbitrate exists, that they are entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope.").  Further, the elements of contract formation are the same under Massachusetts law.  *Vadnais v. NSK Steering Sys. Am., Inc*., 675 F. Supp. 2d 205, 207 (D. Mass. 2009) (J. Neiman) ("It is well established in Massachusetts that the essential elements of a contract are an offer, acceptance, and an exchange of consideration or meeting of the minds.").

Moreover, online agreements like the one Plaintiffs entered with DraftKings (sometimes referred to as "modified clickwrap agreements"[4]) are valid and fully enforceable as a matter of law because clicking an "I accept" button, as Plaintiff did here, manifests assent sufficient to bind parties to the agreement. *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1454 (7th Cir. 1996) (holding that related "shrinkwrap" agreements are enforceable contracts); *Van Tassell v. United Mktg. Grp., LLC*, 795 F. Supp. 2d 770, 790 (N.D. Ill. 2011) (J. Castillo) ("Because clickwrap agreements require affirmative action on the part of the user to manifest assent, courts regularly uphold their validity when challenged."); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 912 (N.D. Cal. 2011) (J. Laporte) (enforcing arbitration provision "in light of recent caselaw holding that clickwrap presentations providing a user with access to the terms of service and requiring a user to affirmatively accept the terms, even if the terms are not presented on the same page as the acceptance button, are sufficient"); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 839 (S.D.N.Y. 2012) (J. Holwell) ("[F]or those to whom the internet is an indispensable part of daily life, clicking the hyperlinked phrase is the twenty-first century equivalent of turning over the cruise ticket" to review the governing terms).

Here, Plaintiffs were provided with an opportunity to review the governing Terms of Use in the form of a hyperlink included in the "I agree to the Terms of Use and Privacy Policy" button. (Dent Decl. ¶¶ 4-6.) And because Plaintiffs completed registration of their DraftKings account, they affirmatively assented to be bound by the Terms of Use and its arbitration

---

[4] Courts have categorized these situations "in which the customer must take affirmative action— pressing a 'click' button" and the terms being accepted via mouse click "are available with the use of hyperlink," as modified clickwrap agreements. *Vernon v. Qwest Commc'ns Intern., Inc.*, 857 F. Supp. 2d 1135, 1149-50 (D. Colo. 2012) (J. Shaffer); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 910 (N.D. Cal. 2011) (J. Laporte) (categorizing a situation "where the terms of service are not visible on the page but instead are linked by the blue hyperlink within a smaller grey font following the 'Allow' button" as a modified clickwrap agreement).

provision by clicking the "I agree to the Terms of Use and the Privacy Policy" button; a customer simply cannot deposit funds or use the website *until* he first has agreed to the Terms of Use.  (*Id*. at ¶¶ 7-8.)

Moreover, DraftKings afforded Plaintiffs ample opportunity to first review the governing Terms of Use before each placed his own initial deposit.  In addition to the hyperlink that DraftKings presented to Plaintiffs, the Terms of Use are available on DraftKings' website at all times, and no account, log-on, or money deposits are required to review them.  Plaintiffs (and any potential user, for that matter) are free to review the current Terms of Use at any time.  (*Id*.) Under these circumstances, Plaintiffs cannot argue they were unaware that their relationship with DraftKings was governed by the Terms of Use and its arbitration provision, that they did not accept its terms, or that they are not bound by them.  Accordingly, under the Terms of Use, Plaintiffs were required to either bring their claims on an individual basis in small claims court or submit them to a binding, non-class arbitration.  (Compl. Ex. G at 248.)

**2.      All Of Plaintiffs' Claims Fall Within The Scope Of The Arbitration Provision**

Each of Plaintiffs' claims is an arbitrable issue under the Terms of Use and therefore must be submitted to binding, non-class arbitration.  The scope of the arbitration provision is a matter of contract interpretation and is thus governed by the language in the arbitration agreement.  *Cnty. of McHenry v. Ins. Co. of the W.*, 438 F.3d 813, 821 (7th Cir. 2006).  When interpreting the agreement, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a [] defense to arbitrability."  *Eiland v. Arctic Food Servs., Inc*., No. 08-0066-DRH, 2008 WL 1821713, at *1 (S.D. Ill. Apr. 21, 2008) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp*., 460 U.S. 1, 24-25 (1983)).

All of Plaintiffs' claims (*i.e.*, their ICFA and MMPA claims) fall squarely within the scope of DraftKings' Terms of Use.  Plaintiffs' claims constitute a "dispute[] . . . arising out of or relating to this Agreement, the breach thereof, or any use of the Website (including all commercial transactions conducted through the Website)[.]"  (Compl. Ex. G at 248.)  Plaintiffs made their initial deposits through the DraftKings website (Compl. ¶¶ 50-51), used those initial deposits to pay entry fees to enter multiple DraftKings fantasy contests through the website (*id.* ¶ 52), and assert that they would need to enter additional contests on the website in order to receive the bonus (*Id.* ¶¶ 54-55).

Plaintiffs' Complaint unpersuasively suggests that the scope of the arbitration provision is not clear because "[a]t one place, the[] [Terms of Use] claim that any claim or dispute must be resolved in an individual arbitration proceeding; at another that any claim or dispute must be resolved in a court of competent jurisdiction."  (Compl. ¶ 36.)  But as mentioned previously, the arbitration provision does allow for a party to bring a claim seeking individual relief in small claims court.   (*Supra* pp. 2, 8; *see also* Compl. at 249 ("[f]or any Claims that are not subject to arbitration:  (a) the exclusive jurisdiction and venue for proceedings involving Claims shall be the courts of competent jurisdiction sitting within Suffolk County, Massachusetts.").)  Accordingly, there is neither conflict nor confusion over the scope of the arbitration clause—it covers "[a]ny and all disputes, claims or controversies arising out of or relating to this Agreement, the breach thereof, or any use of the Website . . . except for claims filed in a small claims court that proceed on an individual (non-class, non-representative) basis."  (Compl. Ex. G at 248.)  Only those claims filed in small claims court are to be "resolved in a court of competent jurisdiction."  (Compl. ¶ 36.)

All of Plaintiffs' claims arise out of their use of the website, and their agreement with DraftKings regarding the deposit promotion.  Plaintiffs have not filed individual actions in small claims court; therefore, the claims must be submitted to binding, non-class arbitration.

### 3.    DraftKings Has Not Waived Its Right To Arbitrate

DraftKings has sought to enforce the arbitration provision at every step of the way, and it has not waived the right to arbitrate.  Promptly after it was served in this case, DraftKings demanded that Plaintiff pursue the dispute, if at all, in arbitration.  (MacDonald Decl. ¶ 2.) Plaintiffs still refused to submit their claim to arbitration in accordance with the Terms of Use, and Defendants promptly petitioned the Court to compel arbitration.  Aside from the ministerial acts of entering an appearance, establishing a briefing schedule for the instant motion and filing *pro hac vice* applications, the only action DraftKings has taken before the Court is filing the instant petition to compel arbitration.

### B.    Plaintiffs Cannot Avoid Their Agreements To Arbitrate

Plaintiffs attempt to attack the arbitration provision by offering a series of arguments that are directed to the enforceability of the Terms of Use as a whole.  (Compl. ¶¶ 74-88.)  But the law is clear that all of Plaintiffs' challenges to the validity of the contract are for the arbitrator to decide.  The courts have repeatedly found that "by incorporating the AAA Rules, including Rule 7(a), into the arbitration provision, Plaintiff and [Defendant] clearly and unmistakably agreed to have an arbitrator decide whether they agreed to arbitrate Plaintiff's disputes."  *Wal-Mart Stores, Inc. v. Helferich Patent Licensing, LLC*, 51 F. Supp. 3d 713, 720 (N.D. Ill. 2014) (J. Castillo) (collecting cases).  Here, the Terms of Use incorporate the AAA Rules, and as such, all of the reasons that Plaintiffs set forth in their Complaint attempting to avoid their agreements to arbitrate are meritless because those are issues that have been delegated to the arbitrator.

1.    **The Validity Of The Entire Contract Must Be Determined By An Arbitrator**

Plaintiffs' challenges to the Terms of Use as a whole go far beyond a discussion of the arbitration clause, and they are thus not properly presented to this Court.  *See Wal-Mart*, 51 F. Supp. 3d 713, 720.  In the context of resolving a petition to compel, "a federal court may consider only issues relating to the making and performance of the agreement to arbitrate." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967).  As the Seventh Circuit has repeatedly held, arguments that seek to "invalidate the contract" do not "refute[] the basic point that [Plaintiff] signed an [arbitration] agreement with [Defendant]." *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 742 (7th Cir. 2010).  In that circumstance, the court is "left only with the question whether that contract is enforceable, and that is the kind of issue that [precedent] put[s] squarely in the arbitrator's box." *Id.*

The Complaint makes clear that Plaintiffs' challenges to the Terms of Service are precisely the type that arbitrators are to decide.  Plaintiffs claim that the entire Terms of Use "do not constitute a binding agreement, are unconscionable and void, and are an illusory agreement." (Compl. ¶ 151.)  That plainly is not a challenge to the arbitration provision, but to the entire contract.

Even the portion of the Complaint attempting to specifically address the arbitration provision makes clear that Plaintiffs' challenge is to the larger agreement.  Plaintiff's argument is that "[a]lthough the arbitration provision purports to be mutual, it is not in fact mutual because the revocation provision" that applies to the contract as a whole allows DraftKings to revoke the entire agreement.  (Compl. ¶ 87.)  Notably, the Complaint concedes that the arbitration clause is entirely mutual.  (*See id.*)  Under the arbitration clause, ***both*** DraftKings and the consumer are bound to arbitrate "[a]ny and all disputes, claims or controversies arising out of or relating to this Agreement, the breach thereof, or any use of the Website."  (Compl. Ex. G at 248.)  Under the

11

law, "mutuality of obligation . . . exist[s] because [each party] is equally bound to arbitrate any of its claims that are covered by the agreement." *Scaffidi v. Fiserv, Inc.*, 218 F. App'x 519, 521 (7th Cir. 2007) (citing *Erickson Oil Prods. v. State*, 184 Wis.2d 36 (1994) (explaining that mutuality of obligation means only that both parties or neither party must be bound)); *Kroll v. Doctor's Associates, Inc.*, 3 F.3d 1167, 1170 (7th Cir. 1993) (finding a franchise agreement "unquestionably mutual on its face" because "both [parties] must arbitrate all disputes arising out of or relating to the franchise agreements."). Thus, Plaintiffs' challenge is meritless—the arbitration clause is mutually enforceable, and any assertion that the broader agreement lacks mutuality is a question that is "squarely in the arbitrator's box." *Janiga*, 615 F.3d at 742.

## 2. The Agreement To Proceed On An Individual Basis In Arbitration Is Enforceable

To the extent that Plaintiffs are contending that the requirement that they pursue their claims individually in a binding, non-class arbitration renders the agreement unenforceable, the Supreme Court has already rejected that argument.[5] The Supreme Court has repeatedly held that parties may waive their right to pursue collective action. And when they do so, agreeing to proceed in a bilateral arbitration where each party is proceeding on an individual basis, that agreement will be enforced. *Am. Express v. Italian Colors Restaurant*, 133 S. Ct. 2304, 2309 (2013) ("[C]ourts must 'rigorously enforce' arbitration agreements according to their terms, including terms that 'specify *with whom* [the parties] choose to arbitrate their disputes, and the rules under which that arbitration will be conducted.") (internal quotations and citations

---

[5] The relevant section of the Terms of Use provides:

"Any and all claims shall be arbitrated on an individual basis only, and shall not be consolidated or joined with or in any arbitration or other proceedings involving a Claim of any other party. You and DraftKings agree that the arbitrator shall have no authority to arbitrate any Claim as a class action or in any other form other than on an individual basis." (Compl. Ex. G at 248.)

omitted); *cf. Stolt-Nielsen v. Animalfeeds Int'l Corp.*, 130 S. Ct. 1758, 1775 (2010) ("[A] party

may not be compelled under the FAA to submit to class arbitration unless there is a contractual

basis for concluding that the party agreed to do so"); *AT&T Mobility LLC v. Concepcion*, 131 S.

Ct. 1740, 1751 (2011) (holding that a "switch from bilateral to class arbitration" without explicit

consent is fundamentally inconsistent with the FAA's substantive provisions).

Moreover, Plaintiffs cannot attempt to use any state-law doctrines or notions of

"unconscionability" to circumvent the decisions of the Supreme Court recognizing the validity of

a class action waiver.  Indeed, any state law finding the waiver unconscionable under state law

"is preempted by the FAA in favor of enforcing the parties' agreement to arbitrate on an

individual basis only."  *Lewis v. Advance Am., Cash Advance Centers of Illinois, Inc.*,

No. 13-CV-942-JPG-SCW, 2014 WL 47125, at *3 (S.D. Ill. Jan. 6, 2014); *Robinson v. Title

Lenders, Inc.*, 364 S.W.3d 505, 515 (Mo. 2012) ("*Concepcion*, however, will not allow an

arbitration agreement to be invalidated by any defense that is applied in a way that singles out or

disfavors arbitration . . . post-*Concepcion*, courts may not apply state public policy concerns to

invalidate an arbitration agreement even if the public policy at issue aims to prevent undesirable

results to consumers.").

Moreover, like the plaintiffs in *Concepcion*, Plaintiffs here cannot allege any defects in

the formation of the contract, and their arguments that the contract is allegedly adhesive are

meritless.  "[A]dhesion contracts generally are valid."  *Scaffidi v. Fiserv, Inc.*, 218 F. App'x 519,

521 (7th Cir. 2007); *Concepcion*, 131 S. Ct. at 1750 ("the times in which consumer contracts

were anything other than adhesive are long past").  Consequently, any assertion Plaintiffs may

make regarding the "unconscionability" of the class action waiver they assented to would

impermissibly conflict with *Concepcion*.  The presence of a class action waiver does not impact

the validity of the arbitration agreement, and Plaintiffs must pursue their claims, if at all, in a binding, non-class arbitration.

### 3.      The Arbitration Provision Is Not Unconscionable

Plaintiffs cannot satisfy their burden to demonstrate that the arbitration agreement is invalid or the issue otherwise non-arbitrable.  Under Illinois law[6], a party seeking to invalidate an otherwise valid arbitration provision must demonstrate that the provision is both procedurally and substantively unconscionable.  *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 777 (7th Cir. 2014).

"Substantive unconscionability . . . concerns the actual terms of the contract and examines the relative fairness of the obligations assumed . . . . Indicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity."  *Jackson*, 764 F.3d at 778 (citing *Kinkel v. Cingular Wireless LLC*, 223 Ill. 2d 1, 21 (2006)).  Plaintiff cannot demonstrate that DraftKings' arbitration provision contains any terms that are unreasonable and unfair, never mind "so one-sided as to oppress or unfairly surprise an innocent party."  *Id.*  Here, the provisions are mutual, reciprocal and provide for arbitration before a recognized and respected organization that has developed a comprehensive set of rules to govern arbitrations and ensure fairness to all parties involved—the AAA.  The arbitration provision further incorporates the Supplementary Procedures for Consumer-Related Disputes, which provides that DraftKings will pay for the arbitrator's compensation.  (Compl.

---

[6]   Again, there is no difference under Massachusetts law.  *In re DiMare*, 462 B.R. 283, 307 (Bankr. D. Mass. 2011) (J. Hillman) (applying Massachusetts law, under which "the test for unconscionability is a conjunctive one and the plaintiff must prove both procedural and substantive unconscionability to prevail").

Ex. G at 248; MacDonald Decl., Ex. A.)  There simply is no basis for any argument of unreasonableness or unfairness in these arbitration provisions.

Nor can Plaintiffs demonstrate procedural unconscionability, which is also required to invalidate an otherwise valid arbitration provision.  "A contract is procedurally unconscionable if an impropriety in the process of forming the contract deprived a party of a meaningful choice." *In re Marriage of Tabassum & Younis*, 377 Ill. App. 3d 761, 775 (2007).  "Procedural unconscionability refers to a situation where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it."  *Williams v. Jo-Carroll Energy, Inc.*, 382 Ill. App. 3d 781, 784 (2008).  "Factors to be considered in determining whether an agreement is procedurally unconscionable include whether each party had the opportunity to understand the terms of the contract, whether important terms were hidden in a maze of fine print, and all of the circumstances surrounding the formation of the contract." *Jackson*, 764 F.3d at 777-78 (citing *Phoenix Ins. Co. v. Rosen*, 242 Ill. 2d 48, 59 (2011)).

Plaintiffs voluntarily agreed to the DraftKings' Terms of Use when they completed registration for a DraftKings account and deposited money through the website.  The Terms of Use are freely available on DraftKings' website and are hyperlinked to the button users must click to demonstrate assent to DraftKings' Terms of Use and Privacy Policy at registration. There is nothing unconscionable about that procedure, and courts have consistently upheld Terms of Use agreements similar to the one that Plaintiffs entered into with DraftKings.  *See, e.g.*, *Fteja*, 841 F. Supp. 2d at 840-41 (holding that hyperlinked Terms of Use were valid when plaintiff was "informed of the consequences of his assenting click and he was shown [via hyperlink] where to click to understand those consequences") (collecting cases); *Swift*, 805 F. Supp. 2d at 912 (holding that an arbitration provision was binding "[b]ecause Plaintiff

was provided with an opportunity to review the terms of service in the form of a hyperlink immediately under the 'I accept' button and she admittedly clicked 'Accept'").

Plaintiffs also allege that the Terms of Use are procedurally unconscionable.  (Compl. ¶¶ 142, 151.)  Plaintiffs claim that the arbitration provision is difficult to find and difficult for the average consumer to understand.  (*Id*. at 144-45.)  But the arbitration language *was highlighted and set off in bold type*, in a distinct section that states in all caps:  "ARBITRATION, CONSENT TO JURISDICTION IN MASSACHUSETTS, ATTORNEY'S FEES."  (Compl. Ex. G at 248.)  This sign post is in place to clearly indicate the existence, and terms of, the arbitration provision.  "Even if the relevant language concerning arbitration was not highlighted and set off in bold type, moreover, the Supreme Court has held that states may not apply a heightened conspicuousness requirement to arbitration provisions."  *Forness*, 2006 WL 726233, at \*2 n.5 (citing *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 686-88(1996)).

## 4.    The Court Should Dismiss The Complaint As All Claims Are Subject To Arbitration

Each of Plaintiffs' claims are within the scope of the arbitration provision.  When every claim raised in a complaint is subject to arbitration, courts will couple their grant of a petition to compel with an order dismissing the complaint, as no claims are pending before the court. *Cont'l Cas. Co. v. Am. Nat. Ins. Co.*, 417 F.3d 727, 735 (7th Cir. 2005) ("We conclude that the issues presented by the complaint are subject to arbitration under the Participation Agreement. Moreover, because the Federal Arbitration Act forbids the district court to compel arbitration outside the confines of the district, the court properly dismissed the action."); *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 810-11 (7th Cir. 2011) ("this case was properly dismissed for improper venue based on the arbitration clause in the franchise agreement. Arbitration

clauses containing language such as 'arising out of' are 'extremely broad' and 'necessarily create a presumption of arbitrability.'").

Accordingly, DraftKings respectfully requests that the Court both grant its petition to compel arbitration and dismiss the proceedings pending arbitration.

### C.   DraftKings Should Be Awarded Its Attorneys' Fees And Expenses Incurred In Enforcing Arbitration

Despite DraftKings' attempts to obtain Plaintiffs' voluntary consent to submit this matter to arbitration, Plaintiffs have proceeded on a path of litigation that has required DraftKings (and this Court) to needlessly expend time and money to ensure compliance with a clear and unambiguous arbitration provision.  Under both the Terms of Use and the governing law in this district, Plaintiffs' conduct warrants an award of the attorneys' fees and costs required to bring this motion.

The parties' agreement expressly provides that DraftKings is entitled to its fees and costs for this motion to compel arbitration:

> In the event that either party initiates a proceeding involving any Claim other than arbitration in accordance with this Section, or initiates a proceeding involving a Claim under this Section other than in the Forum, the other party shall recover all attorneys' fees and expenses reasonably incurred in enforcing this Agreement to arbitrate and the Forum to which the parties have herein agreed.

(Compl. Ex. G at 249.)  The Seventh Circuit has enforced similar provisions for parties seeking attorneys' fees and costs of litigating in federal court.  *See Harter*, 220 F.3d at 557 (upholding the award of attorneys' fees and costs of litigating in federal court because the arbitration provision provided for them).  In awarding fees, the Court would not only give life to the arbitration provisions, but also the enforcement mechanisms that the parties agreed would be in place if one of them did not abide by the agreement to arbitrate.

## IV.    CONCLUSION

For all the foregoing reasons, DraftKings respectfully requests that the Court enter an order compelling Plaintiff to submit his claims to individual arbitration.  In addition, DraftKings respectfully requests the Court to dismiss all of Plaintiff's claims and award DraftKings its attorneys' fees and expenses incurred in enforcing arbitration.

DATED:  June 25, 2015                                     HEPLERBROOM LLC

By:  /s/ Theodore J. MacDonald, Jr.
    Theodore J. MacDonald, Jr.        #3125246IL
      email:  tjm@heplerbroom.com
    W. Jason Rankin                        #6237927IL
      email:  wjr@heplerbroom.com
    130 North Main Street
    Edwardsville, Illinois 62025
    618-656-0184 telephone
    618-656-1364 fax
        --and--
GIBSON DUNN & CRUTCHER LLP
    James P. Fogelman          *pro hac pending*
      email:  jfogelman@gibsondunn.com
    Austin V. Schwing           *pro hac pending*
      email: aschwing @gibsondunn.com
    Timothy W. Loose           *pro hac pending*
      email:  tloose@gibsondunn.com
    333 South Grand Avenue
    Los Angeles, California  90071
    213-229-7000 telephone
    213-229-7520 fax
ATTORNEYS FOR **DEFENDANT**

## <u>PROOF OF SERVICE</u>

I hereby certify that I electronically filed on June 25, 2015, the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

ATTORNEY FOR **PLAINTIFFS**.............................. Anthony S. Bruning
Richard S. Cornfeld

*/s/ Theodore J. MacDonald, Jr.*

19