IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | | |
|---|---|---|
| CORY HEMRICH and COOPER OGBORN individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Cause No.:  3:15-cv-445-DRH-SCW |
| DRAFTKINGS, INC., a Delaware corporation, | ) ) | |
| Defendant. | ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND DISMISS PROCEEDINGS**

## TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................ 1

II.  NATURE OF THE CASE ................................................................................... 2

III.  LEGAL STANDARD .......................................................................................... 6

IV.  ARGUMENT ........................................................................................................ 6

   A.  Whether the Terms of Use Are a Binding Contract Is an Issue for the Court ........ 6

   B.  DraftKings Has Not Established That Its Promises Were Anything But Illusory, and Therefore Has Not Shown That the Terms of Use Are a Contract ................. 8

   C.  DraftKings' Terms of Use Are Both Substantively and Procedurally Unconscionable ............................................................................... 12

      1.  Unconscionability in Illinois May Be Either Procedural or Substantive .. 13

      2.  The Terms of Use Are Substantively Unconscionable Because They Are Completely One-Sided Since DraftKings Can Revoke All User Rights and Users Are Unable To Bring Any Claim To Enforce The Agreement ....... 13

      3.  The Terms of Use Are Procedurally Unconconscionable Because Factors Used To Deny Claims of Procedural Unconscionability Are Absent ....... 14

V.  CONCLUSION .................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ace Hardware Corp. v. Advanced Caregivers, LLC,*
    2012 WL 5197942 (N.D. Ill. Oct. 18, 2012) ............................................................ 15

*Almeida v. Travelers Ins. Co.,*
    383 Mass. 226, 418 N.E.2d 602 (1981) ................................................................ 19

*Am. Laminates, Inc. v. J.S. Latta Co.,*
    980 S.W.2d 12 (Mo. Ct. App. 1998) ..................................................................... 10

*AT&T Mobility LLC v. Concepcion,*
    563 U.S. 333, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011) ................................... 12

*Buckeye Check Cashing, Inc. v. Cardegna,*
    546 U.S. 440 (2006) ............................................................................................... 7

Carey v. 24 Hour Fitness, USA, Inc.,
    669 F.3d 202 (5th Cir. 2012) ............................................................................... 10

*ChampionsWorld LLC v. U.S. Soccer Fed'n, Inc.,*
    726 F. Supp. 2d 961 (N.D. Ill. 2010) ................................................................... 13

*Crown Mortgage Co. v. Young,*
    989 N.E.2d 621 (Ill. App.) ................................................................................... 13

*DeLuca v. Bear Stearns & Co.,*
    175 F. Supp. 2d 102 (D. Mass. 2001) .................................................................. 10

*Deputy v. Lehman Bros., Inc.,*
    345 F.3d 494 (7th Cir.2003) .................................................................................. 7

*Domenichetti v. Salter Sch.,*
    2013 WL 1748402 (D. Mass. Apr. 19, 2013) ...................................................... 11

*Dowd & Dowd, Ltd. v. Gleason,*
    181 Ill. 2d 460, 693 N.E.2d 358 (1998) .............................................................. 18

*Dwyer v. Graham,*
    99 Ill. 2d 205, 457 N.E.2d 1239 (1983) .............................................................. 10

*F.T.C. v. Sperry & Hutchinson Co.,*
    405 U.S. 233 n. 5 (1972) ........................................................................................ 4

*Fenberg v. Goggin*,
  800 S.W.2d 132 (Mo. Ct. App. 1990) ..................................................................... 10

*Frank's Maint. & Eng'g, Inc. v. C. A. Roberts Co.*,
  86 Ill. App. 3d 980, 408 N.E.2d 403 (1980) .................................................... 14, 15

*Frye v. Speedway Chevrolet Cadillac*,
  321 S.W.3d 429 (Mo. Ct. App. 2010) ................................................................... 11

*Gibson v. Neighborhood Health Clinics*,
  121 F.3d 1126 (7th Cir.1997) .................................................................................. 7

*Gill v. Richmond Co-op. Ass'n*,
  309 Mass. 73, 34 N.E.2d 509 (1941) ..................................................................... 10

*Gore v. Alltel Commc'ns, LLC*,
  2011 WL 1303820 (S.D. Ill. Apr. 1, 2011) .............................................................. 8

*Granite Rock Co. v. International Brotherhood of Teamsters*,
  561 U.S. 287, 130 S.Ct. 2847, 177 L.Ed.2d 567 (2010) ......................................... 7

*Harker v. City of Holyoke*,
  390 Mass. 555, 457 N.E.2d 1115 (1983) ............................................................... 19

*In re Marriage of Pogue*,
  2015 Ill. App. (2d) 140369-U, ............................................................................... 14

*J.F. New & Associates, Inc. v. Int'l Union of Operating Engineers, Local 150, ALF-CIO*,
  2015 WL 1455258 (N.D. Ind. Mar. 30, 2015) ......................................................... 8

*Jackson v. Payday Fin., LLC*,
  764 F.3d 765 (7th Cir. 2014) ................................................................ 2, 12, 13, 14

*Janiga v. Questar Capital Corp.*,
  615 F.3d 735 (7th Cir. 2010) ................................................................... 1, 6, 7, 8

*Kinkel v. Cingular Wireless LLC*,
  223 Ill. 2d 1, 857 N.E.2d 250 (2006) .............................................................. 13, 14

*Magruder Quarry & Co. v. Briscoe*,
  83 S.W.3d 647 (Mo.App. E.D.2002) ..................................................................... 12

*Martinez v. Utilimap Corp.*,
  2015 WL 3932151 (S.D. Ill. June 25, 2015) .......................................................... 11

*Morrow v. Hallmark Cards, Inc.*,
   273 S.W.3d 15 (Mo. App. 2008) ........................................................................ 12

*O'Quinn v. Comcast Corp.*,
   2010 WL 4932665 (N.D. Ill. Nov. 29, 2010) ..................................................... 15

*Pivoris v. TCF Fin. Corp.*,
   2007 WL 4355040 (N.D. Ill. Dec. 7, 2007) .................................................. 15, 17

*Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*,
   388 U.S. 395 (1967) ............................................................................................ 7

*Razor v. Hyundai Motor Am.*,
   222 Ill. 2d 75, 854 N.E.2d 607 (2006) ....................................................... 2, 13, 14

*Rent-A-Center W., Inc. v. Jackson*,
   561 U.S. 63 (2010) ............................................................................................. 7

*Robinson v. Toyota Motor Credit Corp.*,
   775 N.E.2d 951 (Ill. 2002) .................................................................................. 4

*Sherman v. AT & T Inc.*,
   2012 WL 1021823 (N.D. Ill. Mar. 26, 2012) .................................................... 15

*Sphere Drake Ins. Ltd. v. All Am. Ins. Co.*,
   256 F.3d 587 (7th Cir.2001) ............................................................................... 7

*Thomas D. Philipsborn Irrevocable Ins. Trust v. Avon Capital, LLC*,
   2011 WL 5170287 (N.D. Ill. Oct. 31, 2011) ................................................... 6, 8

*Tinder v. Pinkerton Sec.*,
   305 F.3d 728 (7th Cir.2002) ............................................................................... 6

*Tortoriello v. Gerald Nissan of N. Aurora, Inc.*,
   379 Ill. App. 3d 214, 882 N.E.2d 157 (2008) .................................................... 15

*Van Tassell v. United Mktg. Grp., LLC*,
   795 F. Supp. 2d 770 (N.D. Ill. 2011) .............................................................. 6, 8

*Yellow Cab Affiliation, Inc. v. New Hampshire Ins. Co.*,
   2011 WL 307617 (N.D. Ill. Jan. 28, 2011) ........................................................ 8

## Statutes

45 U.S.C. § 5(a) .................................................................................................... 4

815 ILCS 505/1 *et seq.* .............................................................................................. 2

815 ILCS 505/2 ......................................................................................................... 4

9 U.S.C. § 2 ........................................................................................................ 1, 12

9 U.S.C. § 3 ............................................................................................................. 1

Mass. Gen. Laws. ch. 218, § 21 ............................................................................. 19

Mo. Rev. Stat. § 407.010 *et seq* .............................................................................. 2

**Regulations and Rules**

15 Mo. CSR § 60-8.020 ............................................................................................ 4

Fed R. Civ. P. 56 ...................................................................................................... 6

*FTC's Guide Concerning Use of the Word "Free" and Similar Representations,* 16 C.F.R. § 251.1 ..................................................................................................................... 4

**Other Authorities**

3 *Williston on Contracts* § 7:7 (4th ed. 2008, Richard A. Lord ed.) ............................ 9

Restatement (Second) of Contracts § 77 (1981) ........................................................ 9

## I.    INTRODUCTION

The argument of Defendant DraftKings, Inc. that the Federal Arbitration Act, 9 U.S.C. § 2, requires that Plaintiffs' claims be decided in arbitration depends on the existence of a binding written contract between DraftKings and Plaintiffs containing an arbitration provision.  Here the only such document that could possibly constitute such a contract is DraftKings' Terms of Use.  But rather than even attempt to show that the Terms of Use are a binding contract, DraftKings instead argues that this Court is powerless to decide this issue and mistakenly insists that only an arbitrator can determine whether a valid contract with an arbitration provision exists.  For that reason and others, DraftKings' motion is utterly misplaced:

*First*, in arguing that this Court has no authority to decide whether the Terms of Use constitute a valid contract, Defendant has it exactly backwards.  The case on which it relies, *Janiga v. Questar Capital Corp.*, 615 F.3d 735 (7th Cir. 2010), stands for the opposite of DraftKings' position.  It states that "the court must decide whether a contract exists before it decides whether to stay an action and order arbitration."[1]  *Id.* at 742.

*Second*, relying on that mistaken contention, DraftKings never addresses the merits of whether the Terms of Use are in fact a binding contract with all that entails, including consideration and meeting of the minds.  At least for purposes of this motion, DraftKings thus in effect concedes that there was no contract.  And, in fact, the Terms of Use are not a contract.  The promises that DraftKings supposedly made were all illusory, and it was not bound to do anything because the Terms of Use allow DraftKings to revoke any or all of Plaintiffs' rights and to amend the purported agreement without notice.  They also include a provision by which the

---

[1] Defendant's motion seeks dismissal, not a stay. Defendant's Motion to Compel Arbitration and Dismiss the Proceedings ("Def.'s Mo."), Doc. 20 at 18 but the Arbitration Act allows the court to stay the action "until such arbitraton has been had …."  9 U.S.C. § 3.

users released DraftKings from any liability or claim "whatsoever," rendering users powerless to hold DraftKings to its supposed agreements.  Thus, the Terms of Use are not a contract.

Finally, even if that were not the case, the Terms of Use are both substantively and procedurally unconscionable under Illinois law, contrary to DraftKings' argument that they are neither.  They are substantively unconscionable because, in allowing DraftKings to revoke all of the users' rights and requiring that the users release DraftKings from all claims, they are "so one-sided as to oppress or unfairly surprise an innocent party [with] an overall imbalance in the obligations and rights imposed by the bargain …." *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 778 (7th Cir. 2014), *cert. denied sub nom. W. Sky Fin. v. Jackson*, 135 S. Ct. 1894, 191 L. Ed. 2d 763 (2015).  They are procedurally unconscionable because the arbitration provision is "so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it" and because Plaintiffs had "a lack of bargaining power." *Razor v. Hyundai Motor Am.*, 222 Ill. 2d 75, 99, 854 N.E.2d 607, 622 (2006).  They are also fatally confusing, requiring on the one hand that any dispute be resolved in a Massachusetts court of competent jurisdiction – which contrary to DraftKings' argument does not mean small claims court – and on the other hand in arbitration.

## II.    NATURE OF THE CASE

Plaintiffs Cory Hemrich and Cooper Ogborn brought this lawsuit under the consumer protection statutes of their respective states, the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.*, ("ICFA") in the case of Mr. Hemrich, and the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010 *et seq.,* ("MMPA") in the case of Mr. Ogborn.[2]  They seek to redress deceptive and

---

[2] Plaintiff Ogborn's name, misspelled in the Complaint, was corrected a few days later.  *See* Motion to Correct Typographical Errors, Doc. 4, and Order granting [4] Motion to Amend/Correct.  Doc. 5.  Plaintiff Ogborn, a permanent resident of Illinois, made his DraftKings transaction from Missouri, where he was attending college.

unfair business practices of DraftKings, a fast-growing operator of on-line daily fantasy sports games. *See* Class Action Complaint ("Compl."), Doc. 1. Consumers pay to play DraftKings' contests in hopes of winning cash prizes. To lure them, DraftKings represents that it will double their first deposit of money with what it variously describes as a "Free Bonus," "Free Offer," "100% First-Time Deposit Bonus" and "**DOUBLE YOUR CASH**" bonus (emphasis in DraftKings' advertisements). *Id.* ¶¶ 24-37. It makes these representations in on-line and broadcast advertising and on its website. *Id.* One ad states: "[P]ut in one-hundred bucks, you get two hundred to play with. Put in three hundred, and get six hundred. Put in six hundred, and get twelve hundred." *Id.* ¶ 37. DraftKings even tells consumers about this bonus at the moment they make their first payment by clicking in a box on its Deposit page, as shown in this screenshot (*Id.* ¶ 37):



Only after they have clicked one of those boxes and paid their money do users learn the true nature of the "double your cash" offer or "100% First-Time Deposit Bonus." Instead of seeing their money double, consumers only get 4% or less. So it is really "put in $100 and get $104 to play with." They can continue to accumulate their bonus, but only if they spend more money in additional contests until either the bonus adds up to the original deposit or four months go by, when accumulating the bonus suddenly ends. *Id.* ¶¶ 47-56. Thus, a participant would have to pay 25 times the initial deposit, and do so within the first four months, to obtain the

3

promised "100% First-Time Deposit Bonus" or "**DOUBLE YOUR CASH**" bonus.  *Id.* ¶¶ 47-56.

For Plaintiff Ogborn, that would have meant spending $6,250 within four months to obtain the

promised $250 ("put in $6,250 and get $6,500 to play with").  *Id.* ¶ 55.

Plaintiffs allege that these actions are deceptive and unfair under the ICFA and MMPA.

*Id.* ¶¶ 57-73.  As part of those allegations, Plaintiffs allege that Defendant violated the Federal

Trade Commission's interpretation of Section 5(a) of the FTC Act, 45 U.S.C. § 5(a), which is

incorporated in both statutes.  815 ILCS 505/2; 15 Mo. CSR § 60-8.020,  Specifically, Plaintiffs

allege that Defendant violated the FTC's Guide Concerning Use of the Word "Free" and Similar

Representations, codified in the Code of Federal Regulations, 16 C.F.R. § 251.1.  Compl. ¶¶ 62-

65.  Moreover, both state statutes include unethical practices within their prohibitions of

unfairness.  *Robinson v. Toyota Motor Credit Corp*., 775 N.E.2d 951, 961 (Ill. 2002), citing *F.T.C.

v. Sperry & Hutchinson Co*., 405 U.S. 233 at 244 n. 5 (1972); 15 Mo. CSR § 60-8.020.  Plaintiffs

allege that Defendant's practices are unethical, Compl., ¶ 66, and for support cite ethical

principles recognized by the Direct Marketing Association, the leading industry association for

companies that, like Defendant, market to consumers.  *Id.* ¶¶ 67-73.

Plaintiffs also seek a declaratory judgment that DraftKings' Terms of Use do not

constitute a binding agreement, are an illusory agreement, and are unconscionable and void.

Compl., Count V.  When a user registers with DraftKings, he or she must click a box indicating

agreement to the Terms of Use, which are available with a link.  Decl. of Tim Dent, Doc. 20-1, ¶

3.  Those Terms of Use are not negotiable.  Compl. ¶ 88.  As presented on the DraftKings

website, they contain a maze of fine print with nearly 6,000 words in single-spaced tiny print.[3]

---

[3] *Id.* ¶ 74 and Ex. G thereto.  DraftKings submitted to the Court the Declaration of Tim Dent attaching an internal version of the Terms of Use, Doc. 20-1 at 10-18.  That version has larger type than the website version in Compl., Ex. G, and the larger type makes it is easier to read.  For example, the nearly 100-word paragraph under the heading "User Agreement" is crammed into 3 ½ lines on the website (Ex. G at 1), while DraftKings' internal version gives it

They also inconsistently provide that they constitute an agreement with DraftKings and that the Terms of Use, DraftKings Privacy Policy and the Rules of the contests together constitute "the Agreement."  Compl. ¶ 76.

But whatever makes up what DraftKings sets forth as "the Agreement," it does not bind DraftKings to anything.  The Terms of Use reserve to DraftKings the right to deny service to any user for any reason "whatsoever," the right without prior notice to revoke any or all rights that the user has under them, and the right to amend them at any time and without notice.  *Id.* ¶¶ 80-83.  Thus, although the Terms of Use contain a provision that purports to require each party to submit any claims to arbitration, DraftKings reserves to itself the right to modify away its own restriction, and indeed to revoke all of its own promises.  In addition, the Terms of Use provide that the user releases DraftKings, as well as its parents, subsidiaries, affiliates, officers, directors, employees, shareholders and representatives from any and all liability, claims or actions "of any kind whatsoever."  *Id.* ¶¶ 78-79.  Thus, DraftKings could refuse to perform any of its purported obligations, including paying any prize money "whatsoever," leaving the user with no recourse to enforce a breach of this purported "Agreement."

At the same time, the Terms of Use provide inconsistently that any diputes must be decided exclusively by a court of competent jurisdiction in Suffolk County, Massachusetts, and that they must be decided exclusively in arbitration or a small claims court.  One term states: "Any claim or dispute between you and DraftKings that arises in whole or in part from the Terms of Use, the Website or any Contest shall be decided ***exclusively by a court of competent jurisdiction*** located in Suffolk County, Massachusetts."  *Id.* ¶ 86 (emphasis added).  Another term states:

> Any and all disputes, claims or controversies arising out of or relating to this
> Agreement, the breach thereof, or any use of the Website (including all

---

5-plus lines.  But DraftKings apparently does not contest the accuracy of Plaintiffs' screenshot taken from the website, since even though Declarant Dent provides many screenshots, he omits one of the Terms of Use.

commercial transactions conducted through the Website) ("Claims"), except for claims filed in a small claims court that proceed on an individual (non-class, non-representative) basis, shall be settled by binding arbitration….

*Id.* ¶¶ 84-85.

Defendant has not yet responded to any of these allegations.  Its motion relates only to its contention that the court must refer this case to arbitration, and even then it does not address Plaintiffs' Count V seeking a declaratory judgment that the purported agreement is illusory (other than simply to mention it; Defs. Mo at 3).

## III.   LEGAL STANDARD

The clearest statement by a court within the Seventh Circuit of which Plaintiffs are aware regarding the legal standard applicable to a motion to send a case to arbitration is by Judge Leinenwebber of the Northern District of Illinois:

> If a party denies that it agreed to arbitrate, it must come forward with sufficient evidence to create a triable issue of fact, as under Rule 56. *Tinder v. Pinkerton Sec.,* 305 F.3d 728, 735 (7th Cir.2002). As on a motion for summary judgment, the court accepts the evidence of the party opposing arbitration, and draws inferences in its favor. *Van Tassell* [*v. United Mktg. Grp., LLC*, 795 F. Supp. 2d 770 (N.D. Ill. 2011) (Castillo, J., )] at *13. If the party opposing arbitration carries its burden, the case proceeds to a trial on the arbitration question. However, if a court finds a valid, enforceable arbitration agreement, any doubts as to the scope of the agreement will be resolved in favor of arbitration.

*Thomas D. Philipsborn Irrevocable Ins. Trust v. Avon Capital, LLC*, 2011 WL 5170287, at *3 (N.D. Ill. Oct. 31, 2011) (Leinenwebber, J.).  Thus, the question for the Court is whether there is a triable issue of fact regarding whether the Terms of Use, which are before the Court (Compl. Ex. G., Doc. 1-7), constitute a binding contract, with all inferences drawn in favor of Plaintiff.

## IV.   ARGUMENT

### A.  Whether the Terms of Use Are a Binding Contract Is an Issue for the Court

In the Seventh Circuit, it is clear that the question of whether a contract containing an arbitration provision exists is for the court, not an arbitrator.  *Janiga*, 615 F.3d at 742.  As that

case stated:  "On this point, therefore, the district court was correct—the court must decide whether a contract exists before it decides whether to stay an action and order arbitration."  *Id.*

DraftKings nevertheless contends that whether a contract exists is an issue only for the arbitrator.  Def.'s Mo. at 10-12.  But that argument is based on a misstatement of *Janiga*'s holding, on which DraftKings purports to rely.  Def.'s Mo. at 11.  The passage that DraftKings quotes – "whether that contract is enforceable, and that is the kind of issue that [precedent] put[s] squarely in the arbitrator's box"[4] – relates not to whether a contract exists but to the plaintiff's claims in that case that the contract was not enforceable because, for example, the plaintiff did not "appreciate[] the nature of the agreement that he had signed …."  *Janiga*, 615 F.3d at 742. But on the question of whether a contract existed to begin with, *Janiga* carefully analyzed four Supreme Court cases and three decisions of the Seventh Circuit to conclude that such issues as contract formation, meeting of the minds and whether there was consideration – all issues raised by the Complaint in this case – are for the court.  Consider this paragraph, discussing the three most recent of the four Supreme Court cases[5] and the three Seventh Circuit decisions:

> In *Granite Rock Co. v. International Brotherhood of Teamsters*, 561 U.S. 287, 130 S.Ct. 2847, 177 L.Ed.2d 567 (2010), the Court eliminated all doubt about the answer to that question, when it said "[i]t is similarly well settled that **where the dispute at issue concerns contract formation**, the dispute is generally for courts to decide." *Id*. at 2855–56. In so doing, it endorsed the position that this court had taken before *Buckeye [Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006)]. See, *e.g., Deputy v. Lehman Bros., Inc.*, 345 F.3d 494 (7th Cir.2003) (remanding a case to the district court to assess **whether there was a meeting of the minds** in light of a motion to compel arbitration); *Sphere Drake Ins. Ltd. v. All Am. Ins. Co.*, 256 F.3d 587, 591 (7th Cir.2001) (holding that "as arbitration depends on a valid contract **an argument that the contract does not exist** can't logically be resolved by the arbitrators"); *Gibson v. Neighborhood Health Clinics*, 121 F.3d 1126 (7th Cir.1997) (addressing **the argument that a promise lacked consideration** as a judicially-determined issue). This rule follows logically from the Court's consistent emphasis on the fact that arbitration is a matter of contract.

---

[4] Def.'s Mo. at 11, quoting *Janiga*, 615 F.3d at 742 (bracket insertions by Defendant).
[5]  The fourth Supreme Court case was *Prima Paint Corp. v. Flood & Conklin Manufacturing Co*., 388 U.S. 395 (1967).

> See, *e.g., Rent–A–Center* [*W., Inc. v. Jackson*, 561 U.S. 63 (2010)], supra, at 2776.

*Janiga*, 615 F.3d at 741-42 (emphasis added).  That court then went on to consider whether a contract was formed.  *Id.* at 743.

To remove any doubt as to who decides whether a contract exists, this Court followed *Jamiga* to make the decision itself.  *Gore v. Alltel Commc'ns, LLC*, 2011 WL 1303820, at *4 (S.D. Ill. Apr. 1, 2011) (Herndon, J.), *rev'd on other grounds,* 666 F.3d 1027 (7th Cir. 2012).[6]  Accordingly, the Court must decide whether DraftKings has established that the Terms of Use constitute a contract between Plaintiffs and Defendant.  If so, the case goes to arbitration; if not it stays here.

### B. DraftKings Has Not Established That Its Promises Were Anything But Illusory, and Therefore Has Not Shown That the Terms of Use Are a Contract

Whether the Terms of Use constitute a contract, in the face of Plaintiffs' allegations that they are not, is not much of an issue because Defendant has not even argued that they are.  As noted above, in its motion Defendant merely ***mentions*** Plaintiffs' request for declaratory relief, Def's. Mo. at 3, but does not attempt to refute Plaintiff's allegations that the Terms of Use are an illusory contract.  The section of Defendant's brief arguing that the arbitration provision agreement is valid, Def.'s Mo. at 5-8, does nothing more than point out that Plaintiffs "voluntarily clicked the box 'I agree to the Terms of Use and the Privacy Policy'" and argues that Plaintiffs thereby "plainly consented to the governing Terms of Use and are now bound by its terms."  *Id.* at 6.  But Defendant never addresses whether a contract was actually formed,

---

[6] Other district courts within this Circuit have also followed *Janiga* and decided, as one court stated, whether to issue "a declaration that the contracts are void *ab initio* and that no provisions of the contracts are binding ….." *J.F. New & Associates, Inc. v. Int'l Union of Operating Engineers, Local 150, ALF-CIO*, 2015 WL 1455258, at *5 (N.D. Ind. Mar. 30, 2015) (Miller, J.); *see also Van Tassell*, 795 F. Supp.2d at 787-88 (Castillo, J.); *Thomas D. Philipsborn*, 2011 WL 5170287, at *3 (Leinenweber, J.); *Yellow Cab Affiliation, Inc. v. New Hampshire Ins. Co.*, 2011 WL 307617, at *5 (N.D. Ill. Jan. 28, 2011) (Dow, J).

8

whether there was a meeting of the minds or whether DraftKings provided consideration, in light of the provisions such as those allowing Defendant to revoke all of the user's rights and to amend the Terms of Use without notice, and the one releasing DraftKings from "any and all claims or actions of any kind whatsoever." DraftKings mentions that Plaintiffs contend that the Terms of Use are an illusory agreement (Defs. Mo. at 11), but DraftKings itself never contends to the contrary – not even as an alternative, "fall-back" argument, not even with the three pages it had to use before hitting the 20-page maximum for its brief. Thus, at least for purposes of this motion, Defendant has in effect conceded that the Complaint states a valid claim that the contract is illusory, and therefore there is no basis for enforcing the arbitration provision.

Moreover, DraftKings' Terms of Use clearly do constitute an illusory contract because its promises are illusory and DraftKings provided no consideration. This is a matter of clear black-letter law. "[W]here the promisor may perform or not, solely on the condition of his whim, his promise will not serve as consideration." 3 *Williston on Contracts* § 7:7 at 111-112 (4th ed. 2008, Richard A. Lord ed.). "[I]n any case where a promise in terms or in effect provides that the promisor has a right to choose one of two alternatives, and by choosing one will escape without suffering a detriment or offering the other party a benefit, the promise is not consideration." *Id.* at 133. That is what the Terms of Use provide by allowing DraftKings to choose either to fulfill its promises or, in the alternative, to revoke all of the user's rights or to amend any provision without prior notice. Thus, to quote from Williston, DraftKings "may perform or not, solely on the condition of [its] whim." *Id.* Similarly, Comment *a* to Restatement (Second) of Contracts § 77 (1981) states, "Words of promise which by their terms make performance entirely optional with the 'promisor' do not constitute a promise." DraftKings'

words of promise by their terms make its performance optional and therefore do not constitute a promise.

This principle is recognized by Illinois, Missouri and Massachusetts.[7]  *See Dwyer v. Graham*, 99 Ill. 2d 205, 209, 457 N.E.2d 1239, 1241 (1983) (quoting both *Williston* and the Restatement for this point); *Am. Laminates, Inc. v. J.S. Latta Co.*, 980 S.W.2d 12, 23 (Mo. Ct. App. 1998) ("Retaining the right to cancel a contract or to avoid one's promise is an unenforceable, illusory promise."); *DeLuca v. Bear Stearns & Co.*, 175 F. Supp. 2d 102, 112 (D. Mass. 2001) ("However, a promise that binds one to do nothing at all is illusory and cannot be consideration.")  In *Dwyer*, the contract was illusory because the defendant was obligated to occupy the rented premises only "as long as desired."  *Id.*  In *Fenberg v. Goggin*, 800 S.W.2d 132, 136 (Mo. Ct. App. 1990), the Missouri Court of Appeals held that, where the plaintiff could, by selling his property, avoid carrying out his promise to allow the defendant to cut wood on the plaintiffs' property, no contract was created.  And in a widely cited Massachusetts case, a promise to buy only "such milk as [the promisors] might order" was not consideration because "[t]he only measure of their promise was their own will."  *Gill v. Richmond Co-op. Ass'n*, 309 Mass. 73, 80, 34 N.E.2d 509, 513-14 (1941).  Similarly, since DraftKings' Terms of Use permit it to revoke all of the user's rights, Compl. ¶ 81,[8] its promises were illusory.

Similarly, if the promisor reserves to itself the right to modify or amend the agreement without the other party's consent, as DraftKings does in the Terms of Use, Compl. ¶ 82, that by itself makes its promise illusory.  Thus, citing *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202

---

[7] Defendant argues the effect of Illinois contract law, Defs. Mo. at 5, and in a footnote states that Massachusetts law is no different.  *Id.* at 5-6, n. 3.  Because Plaintiff  Ogborn clicked the Terms of Use box and made his deposit from Missouri, Plaintiffs also argue the effect of Missouri law on whether a contract was formed.  In truth, the applicable laws of these states are consistent.
[8] Certain provisions survive termination, but they are all provisions that benefit DraftKings, specifically ownership provisions, warranty disclaimers, indemnity and limitations of liability. Compl., Ex. G.

(5th Cir. 2012), a decision interpreting Texas law, Judge Gilbert stated that, under Illinois law as well, if a company "promised to arbitrate any employment-related disputes with the plaintiffs as consideration for the plaintiffs' agreement to do likewise but then left the door open to renege on that obligation if the plaintiffs actually tried to pursue arbitration, [it] would essentially be offering no consideration for the plaintiffs' agreement to arbitrate." *Martinez v. Utilimap Corp.*, 2015 WL 3932151, at *5 (S.D. Ill. June 25, 2015) (Gilbert, J.).  That is the situation here. Because Defendant retained the right to modify any provision of the Terms of Use, it could, without obtaining the user's agreement or even providing notice, modify the arbitration provision in any way it chose.  That renders the agreement illusory.

Likewise, under Missouri law, "if the agreement also includes language permitting one party to unilaterally modify the agreement such that the party could relieve itself of its promises, there is no meaningful mutuality at all, and the contract is illusory and unenforceable." *Frye v. Speedway Chevrolet Cadillac*, 321 S.W.3d 429, 442 (Mo. Ct. App. 2010).  Massachusetts law recognizes the same principle.  In *Domenichetti v. Salter Sch.*, 2013 WL 1748402, at *7 (D. Mass. Apr. 19, 2013), where the defendant retained the right to modify the terms of the dispute resolution policy, "Defendants thus had the power to require plaintiff to arbitrate the covered dispute, while simultaneously reserving the right to modify the agreement.  Such an agreement is not enforceable."  And that is the same here since DraftKings reserved the right to modify the Terms of Use.

There is another aspect of this so-called agreement that makes it illusory.  That is the term providing that the user releases Defendant and its representatives from any and all liability, claims or actions "of any kind whatsoever."  Compl. ¶¶ 78-79.  In light of that provision, what is to hold DraftKings to any of its promises?  For example, Plaintiffs could take DraftKings to

arbitration, DraftKings could refuse to show up, the arbitrator could award damages, and then …

nothing.  Plaintiffs would have supposedly released DraftKings from that claim, and all other

claims – if the Terms of Use were binding.  But a purported agreement that, by its very terms, is

not enforceable, is hardly binding.  It is simply not a contract.  "An illusory promise is not a

promise at all and cannot act as consideration; therefore, no contract is formed." *Morrow v.*

*Hallmark Cards, Inc.*, 273 S.W.3d 15, 30 (Mo. App. 2008) (Ahuja concurring, *quoting*

*Magruder Quarry & Co. v. Briscoe,* 83 S.W.3d 647, 650–51 (Mo.App. E.D.2002)).

### C.  DraftKings' Terms of Use Are Both Substantively and Procedurally Unconscionable

Even if the Terms of Use constitute a contract, they are invalidated by unconscionability

based on general contract principles.  The Arbitration Act provides that an agreement in writing

to submit a dispute to arbitration is valid and enforceable, "save upon such grounds as exist at

law or in equity for the revocation of any contract."  9 U.S.C. § 2.  "This saving clause permits

agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as …

unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning

from the fact that an agreement to arbitrate is at issue."  *AT&T Mobility LLC v. Concepcion*, 563

U.S. 333, 131 S. Ct. 1740, 1746, 179 L. Ed. 2d 742 (2011).  The Seventh Circuit has accordingly

held, post-*Concepcion*, that the defense of unconscionability can be considered with respect to an

arbitration provision.  *Jackson*, 764 F.3d at 779.

To save its Terms of Use, DraftKings argues that they are not unconscionable under

Illinois law, while not mentioning the laws of Massachusetts or Missouri in this context.  Def.'s

Mo. at 14-16.  Plaintiffs will therefore also focus on Illinois law and show why the Terms of Use

are unconscionable and therefore not enforceable.

**1.  Unconscionability in Illinois May Be Either Procedural or Substantive**

DraftKings utterly misstates applicable law by stating, "Under Illinois law, a party

seeking to invalidate an otherwise valid arbitration provision must demonstrate that the provision

is **both** procedurally **and** substantively unconscionable."  Def.'s Mo. at 14 (emphasis added).

For this proposition, Defendant cites the Seventh Circuit's decision in *Jackson*, 764 F.3d at 781.

But what *Jackson* actually said was this:  "Under Illinois law, a contractual provision may be

unconscionable on **either** procedural **or** substantive grounds."  *Id.* at 777 (emphasis added).  That

in fact is the law in Illinois.  *Razor v. Hyundai Motor Am.*, 222 Ill. 2d 75, 99, 854 N.E.2d 607,

622 (2006) ("Unconscionability can be either 'procedural' or 'substantive' or a combination of

both.").  As the Illinois Supreme Court later said, referring to *Razor*, "we rejected the

requirement that both procedural and substantive unconscionability must be found before a

contract or a contract provision will be found to be unenforceable."  *Kinkel v. Cingular Wireless*

*LLC*, 223 Ill. 2d 1, 21, 857 N.E.2d 250, 263 (2006).

Here, however, both aspects of unconscionability are present.

**2.  The Terms of Use Are Substantively Unconscionable Because They Are
Completely One-Sided Since DraftKings Can Revoke All User Rights and
Users Are Unable To Bring Any Claim To Enforce The Agreement**

Regarding substantive unconscionability, the Seventh Circuit stated, quoting *Kinkel*, 857

N.E.2d at 267:

> [Substantive unconscionability] concerns the actual terms of the contract and
> examines the relative fairness of the obligations assumed.... Indicative of
> substantive unconscionability are contract terms so one-sided as to oppress or
> unfairly surprise an innocent party, an overall imbalance in the obligations and
> rights imposed by the bargain, and significant cost-price disparity.

*Jackson*, 764 F.3d at 778 (internal quotations omitted by *Jackson* court).  Examples of contract

terms found to be substantively unconscionable are an agreement requiring a party to pay $7,000

for a service that she could have obtained for free, *Crown Mortgage Co. v. Young*, 989 N.E.2d

13

621, 624-25 (Ill. App.), *appeal denied,* 996 N.E.2d 11 (Ill. 2013); a disclaimer of consequential

damages in an automobile warranty, *Razor*, 854 N.E.2d at 622; grossly excessive sanctioning

fees charged by a sports federation, *ChampionsWorld LLC v. U.S. Soccer Fed'n, Inc.*, 726 F.

Supp. 2d 961, 974 (N.D. Ill. 2010) (Leinenweber, J.); and a term requiring resolution of disputes

using a mechanism that did not exist. *Jackson*, 764 F.3d at 778-779.

Here, the Terms of Use fail for similar reasons.  They purport to provide users with

certain rights, but DraftKings reserves the right to revoke any or all of those rights.  Compl. ¶ 81.

Perhaps even worse, another provision releases DraftKings and related individuals from any

liability, claims or actions "of any kind whatsoever."  *Id.* ¶¶ 78-79.  As a result, there is nothing

to hold DraftKings to any of the obligations it purports to undertake, including the arbitration

provision.  In arguing that the Terms of Use are not substantively unconscionable, Def.'s Mo. at

14-15, DraftKings ignores these provisions, but a more one-sided contract is hard to imagine

than one that is unenforceable by one party.  Just as with the agreements at issue in *In re*

*Marriage of Pogue*, 2015 Ill. App. (2d) 140369-U, ¶ 34, the Terms of Use "do not contain a

bargained-for exchange of promises or performance.  Rather, they impose obligations solely

upon [Plaintiffs] and benefits solely upon [DraftKings].  As such, … they are so one-sided as to

oppress respondent."

### 3.  The Terms of Use Are Procedurally Unconconscionable Because Factors Used To Deny Claims of Procedural Unconscionability Are Absent

"Procedural unconscionability refers to a situation where a term is so difficult to find,

read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to

it, and also takes into account a lack of bargaining power."  *Razor*, 854 N.E.2d at 622.  It

"consists of some impropriety during the process of forming the contract depriving a party of a

meaningful choice."  *Kinkel*, 857 N.E.2d at 264, *quoting Frank's Maint. & Eng'g, Inc. v. C. A.*

*Roberts Co.*, 86 Ill. App. 3d 980, 989, 408 N.E.2d 403, 409-10 (1980).  Aspects to be considered include "the manner in which the contract was entered into, whether each party had a reasonable opportunity to understand the terms of the contract, and whether important terms were hidden in a maze of fine print; both the conspicuousness of the clause and the negotiations relating to it are important, albeit not conclusive …."  *Id.*

  Factors that have led Illinois courts to find arbitration and class-action-waiver provisions not procedurally unconscionable include emphasizing the provision with bold-face type, explaining it in plain English, bringing it to the customer's attention by references elsewhere in the contract, showing the word "arbitrate" multiple times on a signature page (here that would mean the web page where the user clicks that he or she read the Terms of Use), inserting the arbitration clause directly above a signature line (ditto), including the arbitration provision on the defendant's website, and including a term to allow a user to opt out of the arbitration provision.  *See Tortoriello v. Gerald Nissan of N. Aurora, Inc.*, 379 Ill. App. 3d 214, 233-34, 882 N.E.2d 157, 175-76 (2008) ("the arbitration clause was brought to the reader's attention by a notice elsewhere in the contract" including above the signature line in a short, bolded, all capitalized statement); *Ace Hardware Corp. v. Advanced Caregivers, LLC*, 2012 WL 5197942 at *5 (N.D. Ill. Oct. 18, 2012) (Darrah, J.) ("arbitrate" appeared at least 12 times on signature page; arbitration clauses were inserted directly above signature lines); *Sherman v. AT & T Inc.*, 2012 WL 1021823 at *4 (N.D. Ill. Mar. 26, 2012) (Kendall, J.) (The terms of contract "repeat thrice in bold capital letters on the front page that 'paragraph 13 requires arbitration on an individual basis to resolve disputes, rather than jury trials or class actions.'"); *O'Quinn v. Comcast Corp.*, 2010 WL 4932665, at *5 (N.D. Ill. Nov. 29, 2010) (provision to opt out of arbitration); *Pivoris v. TCF Fin. Corp.*, 2007 WL 4355040, at *4 (N.D. Ill. Dec. 7, 2007)  ("The arbitration provision in the

account contract is written in plain English, and in standard font size; the portion relating to the waiver of class action claims is in bold face.")

None of those factors is present here though DraftKings claims that it used highlighting and setting off in bold type. It states: "[T]he arbitration language *was highlighted and set off in bold type*, in a distinct section that states in all caps: 'ARBITRATION, CONSENT TO JURISDICTION IN MASSACHUSETTS, ATTORNEY'S FEES.'" Def.'s Mo. at 16 (emphasis in original). One is tempted to ask what they were looking at when they made ***that*** statement, highlighted and set off with italics as it was. Certainly not the DraftKings Terms of Use as it appears on the website. *See* Compl. Ex. G at 4-5. Yes, the title of the section is in all caps and bolded – just like all 21 of the other titles in the Terms of Use. But highlighting and setting off the arbitration language with bold type? Not close. Take a look at the screenshot below, taken from Ex. G, showing the arbitration language compared to the language of the previous section:

available to DraftKings, may result in account suspension or termination.

We respect your ownership of User Submissions. If you owned a User Submission before providing it to us, you will continue owning it after providing it to us, subject to any rights granted in the Terms of Use and any access granted to others. If you delete a User Submission from the Services, our general license to that User Submission will end after a reasonable period of time required for the deletion to take full effect. However, the User Submission may still exist in our backup copies, which are not publicly available. If your User Submission is shared with third parties, those third parties may have retained copies of your User Submissions. In addition, if we made use of your User Submission before you deleted it, we will continue to have the right to make, duplicate, redistribute, and sublicense those pre-existing uses, even after you delete the User Submission. Terminating your account on a Service will not automatically delete your User Submissions.

We may refuse or remove a User Submission without notice to you. However, we have no obligation to monitor User Submissions, and you agree that neither we nor our parents, subsidiaries, affiliates, employees, or agents will be liable for User Submissions or any loss or damage resulting from User Submissions.

Except as provided in the Privacy Policy, we do not guarantee that User Submissions will be private, even if the User Submission is in a password-protected area. Accordingly, you should not provide User Submissions that you want protected from others.

You represent and warrant that you have all rights necessary to grant to DraftKings the license above and that none of your User Submissions are defamatory, violate any rights of third parties (including intellectual property rights or rights of publicity or privacy), or violate applicable law.

ARBITRATION, CONSENT TO JURISDICTION IN MASSACHUSETTS, ATTORNEY'S FEES

Any and all disputes, claims or controversies arising out of or relating to this Agreement, the breach thereof, or any use of the Website (including all commercial transactions conducted through the Website) ("Claims"), except for claims filed in a small claims court that proceed on an individual (non-class, non-representative) basis, shall be settled by binding arbitration before a single arbitrator appointed by the American Arbitration Association ("AAA") in accordance with its then governing rules and procedures, including the Supplementary Procedures for Consumer-Related Disputes, where applicable. In agreeing to arbitrate all Claims, you and DraftKings waive all rights to a trial by jury in any action or proceeding involving any Claim. The arbitration shall be held in Suffolk County, Massachusetts, and judgment on the award rendered by the arbitrator may be entered by any court having jurisdiction thereof. This arbitration undertaking is made pursuant to and in connection with a transaction involving interstate commerce, and shall be governed by and construed and interpreted in accordance with the Federal Arbitration Act at 9 U.S.C. Section 1, et seq. This arbitration provision shall survive termination of this Agreement. Subject to the limitations set forth below, the arbitrator shall have authority to award legal and equitable relief available in the courts of the Commonwealth of Massachusetts, provided that:

The arbitrator shall not have authority to award punitive damages; and

Any and all claims shall be arbitrated on an individual basis only, and shall not be consolidated or joined with or in any arbitration or other proceeding involving a Claim of any other party. You and DraftKings agree that the arbitrator shall have no authority to arbitrate any Claim as a class action or in any other form other than on an individual basis.

i://www.draftkings.com/help/terms

16

No highlighting, no setting off, no bold face.  Not even italics, as DraftKings uses to emphasize something to this Court.  Nor is the arbitration term in DraftKings' internal version highlighted, set off or bolded.  *See* Doc. 20-1 at 16-17.  Instead, as Plaintiffs accurately alleged and as Ex. G shows, the arbitration provision is hidden in a maze of text more than three-quarters of the way through a document consisting of 6,000 words in single-spaced tiny print.  Compl. ¶¶ 74, 85.  When DraftKings really wishes to emphasize language in the Terms of Use, it uses all caps (though keeping the font tiny), as in this paragraph designed to protect its trademarks (Ex. G, Doc. 1-7 at 5):

> DRAFTKINGS AND OTHER TRADEMARKS CONTAINED ON THE WEBSITE ARE TRADEMARKS OR REGISTERED TRADEMARKS OF DRAFTKINGS IN THE UNITED STATES AND/OR OTHER COUNTRIES. THIRD PARTY TRADEMARKS, TRADE NAMES, PRODUCT NAMES AND LOGOS MAY BE THE TRADEMARKS OR REGISTERED TRADEMARKS OF THEIR RESPECTIVE OWNERS. YOU MAY NOT REMOVE OR ALTER ANY TRADEMARK, TRADE NAMES, PRODUCT NAMES, LOGO, COPYRIGHT OR OTHER PROPRIETARY NOTICES, LEGENDS, SYMBOLS OR LABELS ON THE WEBSITE.

Moreover, contrary to practices cited in the cases above to deny a claim of unconscionability, arbitration is not referred to anywhere else in the Terms of Use besides that one section, nor anywhere else on DraftKings' website, including on pages that refer to the Terms of Use.  There is no opt-out provision, nor any opportunity for the user to negotiate its terms.  And far from being written simply and in plain English, the first whopping sentence of the arbitration section contains 84 words.  *Id.* ¶ 85.  (The first sentence of the release of liability is even worse, with 125 words.  *Id.* ¶ 79.)  The arbitration provision uses such non-plain English terms as "thereof," "non-class, non-representative," "then governing rules and regulations" (which are not further described), "waive," "any court having jurisdiction thereof," "construed," "et seq.," "courts of competent jurisdiction," and "herein agreed."  A lawyer might understand it (ignoring the contradictions described below), but this is not aimed at lawyers, and it is the antithesis of the plain English that can "defeat a claim of procedural unconscionability," as in *Pivoris*, 2007 WL 4355040, at *4.

These Terms of Use also contain internal inconsistencies that render them impossible to understand, even by lawyers. Although Plaintiffs are unaware of any direct precedent involving such inconsistencies (most likely because who would ever draft Terms of Use this way?), an agreement this confusing is certainly unconscionable for being difficult to understand. Here it is unclear whether the purported agreement consists of the Terms of Use by themselves or the Terms of Use in combination with DraftKings' Privacy Policy and the rules of the contests. Compl. ¶ 76. Worse than that, the Terms of Use inconsistently limit where claims must be brought. One provision states: "Any claim or dispute between you and DraftKings that arises in whole or in part from the Terms of Use, the Website or any Contest shall be decided exclusively by a court of competent jurisdiction located in Suffolk County, Massachusetts." Another requires that any dispute, except for claims filed in a small claims court, must be resolved by binding arbitration. *Id.*, ¶¶ 84-85. Defendant somehow takes the position that "court of competent jurisdiction" in the former provision really means "small claims court" and that the provisions are therefore consistent. Defs. Mem. at 9 ("Only those claims filed in small claims court are to be 'resolved in a court of competent jurisdiction.'"). But that argument fails for two reasons.

*First*, if DraftKings, as the drafter, meant "court of competent jurisdiction" to mean "small claims court," there was nothing to stop it from saying so and making the sentence, "Any claim or dispute between you and DraftKings that arises in whole or in part from the Terms of Use, the Website or any Contest shall be decided exclusively by a ***small claims court*** located in Suffolk County, Massachusetts." But it did not. At best, therefore, this provision is ambiguous, and any ambiguity must be construed against the drafter. *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 479, 693 N.E.2d 358, 368 (1998). But even if "court of competent jurisdiction" meant "small claims court and nothing but small claims court," it would still not eliminate the

18

inconsistency because the provision specifying a "court of competent jurisdiction" *requires* that claims be brought there and does not even allow for arbitration as the other provision does.

*Second*, the term "court of competent jurisdiction" has a specific meaning in Massachusetts and in this context it is not limited to small claims court.  In Massachusetts, a "court of competent jurisdiction" is "one 'recognized by law as possessing the right to adjudicate the controversy.'"  *Harker v. City of Holyoke*, 390 Mass. 555, 560, 457 N.E.2d 1115, 1118 (1983), *quoting Almeida v. Travelers Ins. Co.*, 383 Mass. 226, 230, 418 N.E.2d 602, 605 (1981).  Accordingly, "court of competent jurisdiction located in Suffolk County, Massachusetts," cannot mean only a small claims court because a small claims court in Massachusetts is limited to claims of $7,000 or less, Mass. Gen. Laws. ch. 218, § 21, and would not possess the right to adjudicate all conceivable controversies that might arise under the Terms of Use.  It certainly could not adjudicate the present case, which as required by the Class Action Fairness Act, has a jurisdictional amount in excess of $5,000,000.  Compl., ¶ 9.  Once again, the two provisions are plainly inconsistent.

In sum, to survive, DraftKings' Terms of Use have to be both procedurally and substantively "conscionable."  They are neither.  The Court should therefore reject Defendants' unconscionability arguments.

V.      CONCLUSION

For the foregoing reasons, Plaintiffs respectfully requests that Defendant's motion to stay or dismiss be denied.

Dated:  August 24, 2015                 Respectfully submitted,

                                        **LERITZ, PLUNKERT & BRUNING, P.C.**


                                  By:   /s/ Anthony S. Bruning
                                        Anthony S. Bruning,
                                        Anthony S. Bruning, Jr.
                                        555 Washington Avenue, Suite 600
                                        St. Louis, MO 63101
                                        Phone:      (314) 231-9600
                                        Fax:        (314) 231-9480
                                        abruning@leritzlaw.com
                                        ajbruning@leritzlaw.com

                                        And

                                        **LAW OFFICE OF RICHARD S. CORNFELD**

                                  By:   /s/ Richard S. Cornfeld
                                        Richard S. Cornfeld
                                        1010 Market Street, Suite 1720
                                        St. Louis, MO 63101
                                        Phone:      (314) 241-5799
                                        Fax:    (314) 241-5788
                                        rcornfeld@cornfeldlegal.com

                                        *Attorneys for Plaintiffs*


                          **CERTIFICATE OF SERVICE**


The undersigned hereby certifies that the foregoing document was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all Counsel of Record this 24th day of August, 2015.



                                        /s/ Anthony S. Bruning